[Crim. No. 63. Fourth Appellate District.—February 29, 1932.]

THE PEOPLE, Respondent, v. JESUS MESA, Appellant.

C. O. Thompson and P. E. Bingman for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

LAMBERT, J., *pro tem.*—The appellant was charged in the information with the crime of murder and convicted of manslaughter. He appeals from the judgment and order denying his motion for a new trial.

At the trial the appellant relied on the plea of self-defense. There is no question on this appeal, and there could not be, as to the sufficiency of the evidence to support the verdict. There was testimony in the record to the effect that deceased was found lying prostrate on the ground where he had been shot. The evidence disclosed that no weapons of any kind were found upon his person and that he had never been known to have carried any weapons of any kind. The defendant, after firing six shots at the deceased, left the scene without paying any attention whatever to the deceased, and went to a town about two miles distant. So far as the evidence showed, the deceased and defendant had been friendly prior to the encounter. Two of the shots took effect in the region of the hip of the deceased, and he died in the hospital on October 22d, after an operation made necessary by the gunshot wounds inflicted by the defendant. The name of the deceased was Jose Quiroz, and the crime was committed about midnight of October 3, 1931, or possibly around 12:30 A. M. of October 4th. The appellant himself testified at the coroner's inquest and this testimony was introduced at the trial. When asked why he shot the deceased, his testimony was as follows:

"There was three of them out walking that night and then this Quiroz wanted me to go to the side of a tent and these two women, a lady and a girl, came out and then he came out and went to the next tent and went inside and then I

came back to the same tent I was in first; then Jose Quiroz come out and then the lady and the girl told him and the other two to take Jose Quiroz away from there and then I said we will take Jose Quiroz away from there; then I talked to her and we got away from there to the middle of the street, and then Jose Quiroz he went back to the tent again. When we went back the lady and the girl told him, told me, to take him away again; then I told them I would take him away from there, and then he went back to the tent again, that is, I went back to the tent again for Jose Quiroz, and me and the other boy stayed right in the middle of the street and then Juan told me, 'let's take that Jose Quiroz home'. Juan was scared that that lady might hit Jose Quiroz with some club, and then I and Juan went over to the tent, and then that girl had Jose Quiroz out of the tent and then we talked to him to take him home; tried to take him home; then we told him 'let's go home'; then I talked to him that way, 'let's go home'; then when we talked to him 'let's go home', then this fellow Jose Quiroz got mad at me and started to cuss me and then I talked back to him and we got in a dispute, then Jose Quiroz he puts his hand inside of his coat and then I went back and pulled out my gun and then I shot him."

Appellant's sole contention is first, "The court misdirected the jury as to the law and misstated the law of self-defense or justifiable homicide in the given instructions on the part of the prosecution"; second, "The court erred in modifying defendant's requested instruction No. 6 and giving same as modified".

In view of the record in this case, we are not required to consider the first of these assignments of error. The instructions in the reporter's transcript do not show at whose request they were given. Each instruction is merely marked "Given", followed by the name of the trial judge. In *People* v. *Cebulla*, 137 Cal. 314, at 317 [70 Pac. 181, 182], the rule is stated as follows:

"If we consider the above specifications as worthy of discussion, we find by an examination that it does not appear but that the instructions were given at defendant's request. They are simply indorsed as 'Given', and if they were given at the request of the prosecution it is incumbent upon appellant to show it by the record. We will not presume that they were so given for the purpose of examin-

ing them to see if prejudicial error appears. And the same may be said of the refusal to give the instruction pointed out at folio 41. There is nothing to show that defendant requested it, and, besides, we find it substantially given and repeated in other parts of the instructions." (See, also, *People* v. *Casselman,* 10 Cal. App. 234, at 239 [101 Pac. 693].)

Under the authorities above cited, it is incumbent upon appellant to show that the instructions he complained of were not given at his own request, and we may not consider the statements of counsel for appellant and the admission of the attorney-general in their briefs for the purpose of supplying omissions in the record (*People* v. *McPherson,* 6 Cal. App. 266 [91 Pac. 1098]; *People* v. *English,* 52 Cal. 211; *People* v. *Hower,* 151 Cal. 638 [91 Pac. 507]). ▮ Notwithstanding the rule, we have, however, read every word of the evidence in the case and examined each and every instruction and find them to be, when read in connection with the other instructions, substantially correct (sec. 4½, art. VI, Const. of Cal.). ▮ While instruction No. 14 should not have been given in the form it was given as to the first part of the instruction, for the reason that there was no evidence at all that any negligence of the hospital attaches contributed to the deceased's death, yet it was more favorable to appellant than the evidence warranted and of course he may not complain. (*Zolkover* v. *Pacific Elec. Ry. Co.,* 81 Cal. App. 772, at 785 [254 Pac. 926].) The court gave two instructions on "flight", that is, one in addition to the one provided by section 1127 of the Penal Code, and while it would have been better to have just given the one provided for by the Penal Code, we are satisfied that no prejudice resulted therefrom.

▮ As to assignment No. 2, the modification of instruction No. 6, of which appellant complains, this instruction which appellant requested read as follows:

"You are instructed that a person, not the aggressor, being assailed by another has a lawful right to protect himself against his assailant, and may use such force as appears to him necessary, acting as a reasonable person under the circumstances as they then exist and as they reasonably appear to the person assailed.

"In this connection you are instructed that if you believe from the evidence, or have a reasonable doubt thereof, that the defendant was assailed by the deceased, and that the defendant was without fault in causing the assault or in bringing on the encounter; and that the defendant at the time, acting reasonably under the circumstances as they then presented themselves to him, had reasonable ground to apprehend that the deceased had a design to inflict great bodily injury to the person of the defendant or take his life, and that there was imminent danger of such design being accomplished; *and that the defendant so believing fired shots from a pistol to protect himself against such apparent impending danger, and hit the deceased, then and in that event the shooting would be justifiable, even if the defendant in firing such shots took the life of the deceased, and you should find the defendant not guilty,* even though you may believe that it afterwards turned out that the defendant was mistaken and there was no real danger, if the defendant acted in good faith in defending himself; and the defendant under such circumstances had a right to stand his ground, and use all force necessary, as appeared to him acting reasonable under the circumstances as a reasonable person, and he was not required to retreat. And if the jury believe that the defendant did so act as a reasonable person under the circumstances, *and fired the shots in self defense,* then you must acquit the defendant."

The court modified this instruction by eliminating that portion shown above in italics. The instruction as requested was erroneous. It purported to tell the jury just what the defendant might do, regardless of the character of the assault. Not every assault gives the assaulted person the right to kill. It was for the jury to say whether the defendant was justified in what he did, not the court, that is, whether defendant used only such force as was reasonably necessary to repel the assault, if they found there was any assault on defendant. The law is clearly stated in *People* v. *Campbell,* 30 Cal. 312, at 314, as follows:

"It is an elementary principle in criminal law that the person assaulted, is justified in using so much force as is necessary to his defense. To repel a slight assault the person assaulted is not authorized to resort to measures of great violence. He will not be justified in doing those acts that

are calculated to destroy the life of the assailant unless the assault is of such a character as to endanger his life or inflict on him great bodily injury, or to excite his fears as a reasonable man that such would be the result of the assault. And so in all cases of assault. The law limits him to such acts as are necessary to self defense. The law does measure the degree of the force that may be used to repel the assault; and although it will not make the measurement with a nice hand and hold the person assaulted to accountability for force slightly disproportioned to the assault, yet it will hold him responsible for a clearly marked excess.''

The trial court would have been justified in refusing the instruction as presented, but it was proper to modify it so that it would not be objectionable. (*People* v. *Weber,* 149 Cal. 325, at 346 [86 Pac. 671].) Instructions must be read and considered as a whole and in relation to the evidence in the case. In *Hayden* v. *Consolidated Min. & Dredging Co.,* 3 Cal. App. 136, at 139 [84 Pac. 422, 423], the rule is aptly stated and authorities—both criminal and civil—cited, as follows:

''In construing the charge of the court, it must be viewed in the light of common understanding, and the practical administration of justice should not be defeated by a too rigid adherence to close and technical analysis of the whole or any part thereof. (*People* v. *Alsemi,* 85 Cal. 435 [24 Pac. 810] ; *People* v. *Bruggy,* 93 Cal. 476 [29 Pac. 26] ; *Hanson* v. *Stinehoff,* 139 Cal. 173 [72 Pac. 913] ; *Thomas* v. *Gates,* 126 Cal. 8 [58 Pac. 315] ; *Stephenson* v. *Southern Pac. R. R. Co.,* 102 Cal. 150 [34 Pac. 618, 36 Pac. 407] ; *People* v. *Gibson,* 106 Cal. 474 [39 Pac. 864].) 'Jurors may be assumed to have ordinary intelligence and good sense.' (*Ballou* v. *Andrews Banking Co.,* 128 Cal. 567 [61 Pac. 102].) This being true, it follows that the crucial test to be applied in solving the problem before us must be whether a man of ordinary intelligence reading the charge intended for his guidance would be unable to ascertain its meaning as a whole, by reason of inherent contradictions creating confusion and doubt in his mind touching his duty as a juror.''

In *People* v. *Weber,* 149 Cal. 325, at page 345 [86 Pac. 671, 679], it is said: ''Only by taking the instructions as

a whole would a court be enabled to say whether or not the defendant had received fair treatment in this regard. . . . "

Measured by the above rule, we do not hesitate to say that in this case the jury were fairly and intelligently instructed on all the issues in the case and that appellant was fairly tried and justly convicted.

The judgment and order appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.