[Crim. No. 154. Fourth Appellate District.—November 14, 1933.]

## THE PEOPLE, Respondent, v. LEO F. JARVIS et al., Appellants.

B. M. Benson for Appellant Jarvis.

Iener W. Neilsen for Appellant Simpson.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

JENNINGS, J.—The defendants were charged in an information filed by the district attorney of Fresno County with the commission of a felony, to wit, the violation of section 16

of the Deciduous Fruit Dealers Act (Stats. 1929, p. 665). The information contains two counts. In the first count it is alleged that the defendants wilfully and unlawfully engaged in the business of dealer in deciduous fruits as defined in the act without having procured a license so to do. In the second count it is alleged that the defendants represented themselves to be cash buyers as defined in the act, ''by then and there and under said representation purchasing for resale certain deciduous fruit, to-wit: grapes, of A. D. Orr and by failing within forty-eight hours after demand had been made upon them by said growers to pay the full purchase price of said deciduous fruits in lawful money of the United States, or by certified check or by cashier's check or in any other manner at all''. Upon arraignment the defendants pleaded that they were not guilty of the offenses charged against them and were tried before a jury, which returned separate verdicts finding each defendant guilty of the two offenses charged in the information. A motion for a new trial and a motion in arrest of judgment was thereafter presented by each defendant. These motions were denied by the trial court. Judgment was thereupon rendered ordering that for each offense of which they were convicted the defendants be punished by imprisonment in the state prison at San Quentin, California, until legally discharged and that the sentences thus imposed should run concurrently. From this judgment the defendants have prosecuted the present appeal.

Numerous objections are urged by the appellants as grounds for the reversal of the judgment. Because of the fact that we have arrived at the conclusion that the verdict of conviction of each appellant of the offense charged in the second count of the information is clearly not supported by the evidence disclosed by the record, the objection which relates to the second count may properly be first considered.

It is apparent that the second count of the information charges the appellants with the commission of a specific act which it is alleged constituted a violation of section 16 of the above-mentioned statute. This act was the representation made by appellants to A. D. Orr that they were cash buyers. Passing the objections which are presented to the sufficiency of the allegations contained in the second count and assum-

ing, without deciding, that the pleading is not vulnerable to the various attacks urged against it, the complaint of appellants that the verdict of conviction of the offense charged therein is unsupported by the evidence remains to be decided.

The record shows that A. D. Orr was called by the prosecution as a witness and that he testified that he entered into three contracts with various individuals who represented themselves to be fruit buyers for the Federal Farm Lands, Inc., a corporation, of which appellant Jarvis was president and appellant Simpson, was the general manager. In considering the sufficiency of the evidence to support the verdict of conviction of the offense charged in the second count, it will be assumed that the corporation was merely a convenient instrumentality by means of which appellants carried on their operations, that it was wholly controlled by appellants, and that, under the circumstances developed by the evidence, the trial court was warranted in disregarding the corporate fiction and amply justified in concluding that the various fruit buyers who entered into contracts with the witness Orr as agents of the corporation were in fact agents and employees of appellants. Orr testified that the first contract which he made with the Federal Farm Lands, Inc., was dated August 10, 1932, and that the agent who executed this contract for the corporation was H. S. Olsen. This was a written contract which was made on a blank form provided by the corporation. It was admitted in evidence. The contract shows that Orr agreed to sell to the corporation 40 tons of Thompson Seedless grapes at the specified price of $18 per ton. The instrument contained the following provision: "Payment to be made on following day after delivery." The second contract which was made by Orr with the corporation was also a written contract made on a similar form provided by the corporation and it was likewise admitted in evidence. This contract was dated August 12, 1932, and by it the grower agreed to sell to the corporation his entire crop of Malaga grapes. This contract contained the following provision: "Guaranteed not less than $15.00 per ton and 25% of returns over and above this amount after necessary deductions are made." The buyer who executed this contract for the corporation was R. C. Fitzsimmons. Orr testified that no grapes were delivered by him under this contract. The third contract which the witness

Orr testified he entered into with the corporation covered the sale of about 5,000 pounds of Thompson grapes. It was not made on a form provided by the corporation, but was written by Orr himself on a piece of paper. It was executed for the corporation by one J. W. Files. This third contract was not offered in evidence and no testimony regarding its terms was presented. The record is silent as to whether it provided for payment on delivery or demand or whether it was a minimum price guarantee contract. The record also fails to disclose whether any grapes were delivered by Orr under this contract.

From the above *résumé* of the evidence respecting the three contracts which were made between A. D. Orr and the various fruit buyers for the corporation, it is evident that the only one which tended to support the allegations of the second count of the information was the first contract which was executed by Orr and by H. S. Olsen for the corporation on August 10, 1932. This must be true because Orr testified that no grapes were delivered by him under the second contract and the record contains no evidence as to the terms of the third contract or whether any grapes were delivered under it or whether, if such delivery was made, any demand for payment of whatever amount was claimed to be due therefor was ever made upon appellants or the corporation. It must be observed that the fact of demand of payment is, by the language of the second count, made an essential element of the charge that appellants represented themselves to be cash buyers. We are therefore impelled to the conclusion that the only transaction which tended to support the allegations of the second count was the contract entered into between A. D. Orr and H. S. Olsen on August 10, 1932, which provided for the sale of 40 tons of Thompson grapes at a fixed price of $18 per ton "payment to be made on the following day after delivery".

In order, however, that criminal liability may be fastened upon appellants as a result of the making of this contract the evidence must show that appellants, who, under the facts presented, were the principals, authorized the acts of their agent H. S. Olsen. ■ The civil doctrine of *respondeat superior* is not carried into the criminal law so that the mere fact of agency is alone sufficient to impose criminal liability upon the principal (*People* v. *Doble,* 203 Cal. 510, 515 [265

Pac. 184]; *People* v. *Green*, 22 Cal. App. 45, 50 [133 Pac. 334]).

The evidence wholly fails so to connect appellants with the commission of the offense charged in the second count of the information as to impose upon them criminal liability for the acts of their agent. The witness Orr testified unequivocally that he did not meet either of the appellants until after the contract was signed, that he never talked with either of the appellants until after he had delivered the grapes which were the subject of the contract or a part of them, and that neither of the appellants ever represented to them that they were cash buyers. Appellant Jarvis testified that he never gave any fruit buyer any instructions as to the buying of fruit and more particularly that he never gave the agent Olsen any instructions as to the purchase of fruit, that he himself employed no fruit buyers, that Olsen did not exhibit to him for his approval the Orr contract of August 10, 1932, which provided that payment should be made the day following delivery of the Thompson grapes, that he was not aware of the existence of such a contract until he saw it at the preliminary examination. Appellant Simpson was not interrogated regarding the aforesaid contract of August 10, 1932, nor was he asked what instructions he had given the agent Olsen. H. S. Olsen, whose name appears upon the contract as the person who executed it for the corporation, was not called to testify. The witness J. W. Files, who appears to have been the superintendent in charge of the fruit-packing establishment operated by Federal Farm Lands, Inc., in the city of Fresno, testified that he did not authorize Olsen to use any form of contract other than the minimum price guarantee contract which was provided by the corporation, that he did not furnish Olsen with the form of contract which was signed by A. D. Orr on August 10, 1932, that he did not authorize Olsen to execute the aforesaid contract, that Olsen exhibited the contract to him after it had been signed by Orr and that the witness told Olsen that he had no authority to pass upon a contract of that character and that Olsen should consult Jarvis or Simpson in regard to it, that he never discussed this particular contract with Jarvis or Simpson and heard nothing further regarding it.

It is therefore clear that not a scintilla of evidence was produced which tended to show that either of the appellants authorized or encouraged the agent Olsen to enter into the particular contract upon which the prosecution must have relied to establish the commission of the offense alleged in the second count of the information or that either of the appellants aided or abetted Olsen in making the contract or that either of the appellants were informed of the existence of such a contract until long after it had been executed. The evidence was wholly insufficient to warrant the verdict of conviction of either appellant of the offense specified in the second count of the information and that part of the judgment which adjudges them guilty thereof and orders that as punishment therefor each shall suffer imprisonment in the state prison must be reversed.

The objections which are urged to the verdict of conviction of the offense charged in the first count of the information and to that part of the judgment which adjudged appellants guilty of such offense and ordered that as punishment therefor each of them should suffer imprisonment in the state prison are likewise numerous. These objections may be classified as follows: First, objections which relate to the form of the information and challenge its sufficiency as a pleading; second, objections which attack the sufficiency of the evidence to support the verdict and the judgment which was rendered in conformity therewith; third, objections which relate to instructions given by the court and the failure to give certain instructions requested by appellants; fourth, an objection that the court erroneously admitted certain evidence; fifth, objections which attack the constitutionality of the act by virtue of whose provisions the prosecution of appellants was instituted. These objections will be considered *seriatim*.

■ It was strenuously contended throughout the trial of the action and it is now seriously urged that the first count of the information is fatally defective in that it fails to allege the commission of any specific act. The pleading alleges that on or about August 24, 1932, appellants "engaged in the business of dealer in deciduous fruits, as defined by the act . . . without having a license so to do". Section 16 of the statute provides that "Any person who acts as a dealer as defined in this act without a license . . .

is guilty of a felony." It is evident, therefore, that the language of the pleading, while it does not employ the exact wording of the statute, very closely follows it. It is contended that this is not sufficient and that the pleading should have specified the commission of some act or acts whereby appellants would have been informed with certainty what it was that they were accused of having done and could have prepared to meet the specific charge. It is also pointed out that during the trial evidence was admitted which showed the execution of a large number of contracts by the Federal Farm Lands, Inc., with various fruit growers and that it is impossible to discover from the verdict of the commission of what particular act appellants were convicted or to be assured that any two or more jurors agreed upon the guilt of appellants of the commission of any particular act.

█ It is the rule that although an indictment or information need not follow the exact language of the statute, it is nevertheless generally sufficient to charge an offense in the language of the statute which defines it or in language of equivalent import and that this rule applies particularly to purely statutory offenses (14 Cal. Jur., p. 49). Conceivably appellants might properly have been charged with having acted as dealers in deciduous fruits in that on a specified date they did certain things which fell within the statutory definition of the term "Dealer". Dealer is defined in the statute as being every person other than a cash buyer or consignment shipper who attempts to make money on any deciduous fruit by dealing with the grower thereof. Section 16 makes it an offense for any person to act as a dealer without having a license. The language of the statute appears to contemplate that the engaging in any single act as a dealer without a license shall amount to a violation of the statute. The information under consideration goes further and charges that appellants engaged in the business of dealer. The gist of the offense as charged is therefore the prosecution of the business of dealing in deciduous fruit without a license. During the trial of the action the prosecution produced evidence that fruit buyers employed by Federal Farm Lands, Inc., had made a number of minimum price guarantee contracts for the corporation with various growers. The sufficiency of this evidence to establish that

appellants thereby acted as dealers within the language of the statute will hereafter be considered. Assuming for the present that the evidence thus presented was sufficient for the purpose indicated, it is apparent that under the charge as framed in the first count of the information evidence which showed that appellants had, on any number of occasions, acted as dealers could do no more than establish the guilt of appellants of the single offense of engaging in the business of dealer without having procured a license therefor (*State* v. *Bennett*, 102 Mo. 356 [14 S. W. 865, 10 L. R. A. 717]; *State* v. *Finch*, 78 Minn. 118 [80 N. W. 856, 46 L. R. A. 437]). Furthermore, again assuming that the evidence was sufficient for the purpose for which it was presented, it is clear that appellants were not prejudiced by the fact that the prosecution chose to proceed against them for the single offense of engaging in the business rather than to accuse them of having acted as dealers in a considerable number of instances for each of which acts they might have been convicted and suffered punishment.

 Closely related to the contention that the first count of the information is fatally defective in that it fails to allege the commission of any unlawful act is the objection that the trial court should have compelled the prosecution to elect what particular act it relied upon to establish the guilt of appellants of the offense charged in the first count. Demand that respondent make an election was made in the beginning of the trial and throughout the course of the proceedings it was repeatedly urged that the court compel an election. The refusal of the court so to do is assigned as error warranting a reversal of the judgment. Since we have reached the conclusion that the first count of the information is sufficient in charging that appellants engaged in business without specifying any particular instance in which they acted as dealers it necessarily follows that we entertain the opinion that respondent was not required to elect any particular act upon which it would rely to establish the commission of the offense charged in the first count. This must be true, since it is obvious that respondent did not rely on any particular act or contract but upon all the acts whose commission it proved to establish that appellants had engaged in the business of dealing in deciduous fruits without a license. Under the charge as laid there was no

occasion for the court to require an election. Proof that appellants had acted as dealers in a hundred different instances could justify their conviction of only the single offense charged.

It is urged with much vigor that the evidence which was admitted is wholly insufficient to justify a conviction of the offense alleged in the first count of the information. Two particulars are specified in which it is contended that it is fatally insufficient. In the first place, it is pointed out that every contract upon which respondent relied to establish that appellants had engaged in the business of dealing in deciduous fruits without a license was a contract between the particular grower and Federal Farm Lands, Inc., a corporation, and that each of these contracts was executed for the corporation by an agent employed not by appellants but by the corporation. In the second place, it is contended that these various contracts were contracts which were expressly permitted to be made in accordance with the provisions of the Produce Dealers Act of 1927 (Stats. 1927, chap. 860, pp. 1812, 1813) under which the aforesaid corporation was licensed and that the state of California having issued to Federal Farm Lands, Inc., a license to make such contracts and having collected from the corporation the required license fee, cannot now properly and fairly demand that appellants be punished for the commission of a felony which, under the facts shown, consists of making the very sort of contracts expressly permitted by the Produce Dealers Act.

With respect to the first of the two aforesaid specifications of insufficiency, it must be conceded that every contract which was produced by the respondent to support the accusation contained in the first count of the information was a contract between the grower named therein and Federal Farm Lands, Inc., and that the evidence showed that Federal Farm Lands, Inc., was a corporation duly organized under the laws of California. However, it was stipulated that this corporation had only two stockholders. These stockholders were the two appellants. The articles of incorporation were signed by the two aforesaid individuals and by Elizabeth B. Stefanich on May 23, 1932, and it is therein stated that the three incorporators were appointed to act as the first directors. The evidence showed that Elizabeth B. Stefanich was the secretary of appellant

Jarvis. It was also shown that appellant Jarvis was the president and appellant Simpson was the general manager of the corporation, and it was stipulated that Elizabeth B. Stefanich was made secretary of the corporation. The evidence showed that appellant Simpson was actively engaged in the management of the corporation; that appellant Jarvis "frequently" visited the fruit-packing house in the city of Fresno, which was the place where the business of the corporation was carried on; that appellant Jarvis, as president of the corporation, signed the checks which were given to fruit growers in payment for fruit delivered to the corporation; that the two appellants discussed the business of the corporation at all times; that J. W. Files, the superintendent of the packing-house in the city of Fresno, was employed by the appellants; that J. W. Files talked with the appellants before the various "deals" were made; that J. W. Files and appellants employed the agents or fruit buyers who made the various contracts with the growers; that appellant Simpson authorized the printing of the form of contract which was used by the fruit buyers; that this form of contract was discussed at a meeting of the directors of the corporation. Assuming that the contracts which were shown to have been made for the corporation by the fruit buyers were sufficient to show that the corporation acted as a dealer in deciduous fruits under the language of the Deciduous Fruit Dealers Act, we think that it is preposterous to urge that appellants may successfully interpose the corporate fiction as a shield to protect them from the consequences of their own acts. It is too clear from the evidence that the corporation was entirely guided and managed and controlled by appellants to permit so thin a defense (*People* v. *Epstein,* 118 Cal. App. 7 [4 Pac. (2d) 555]).

The contention of appellants with respect to the second specification of evidentiary insufficiency rests largely upon the decision of the Supreme Court of California in the case of *Moulton* v. *Williams Fruit Corp.,* 218 Cal. 106 [21 Pac. (2d) 936]. It is argued that it was therein expressly decided that exactly the same sort of contract as those upon which respondent relied to establish the necessary element of engaging in the business of dealer is a consignment contract within the scope of the Produce Dealers Act of 1927, and since the Deciduous Fruit Dealers Act of

1929 expressly provides that it shall not apply to "Consignment Shippers," and since it was shown that Federal Farm Lands, Inc., was duly licensed in accordance with the provisions of the Produce Dealers Act of 1927, it is manifest that the evidence is wholly insufficient to justify the jury's finding that appellants had unlawfully engaged in the business of dealer in deciduous fruits without a license in violation of the provisions of section 16 of the Deciduous Fruit Dealers Act of 1929. This somewhat involved argument necessitates close analysis of the decision in *Moulton* v. *Williams Fruit Corp.*, *supra*, and a consideration of the scope and effect of the two statutes mentioned.

In the *Moulton* v. *Williams Fruit Corp.* case the facts were as follows: During the grape season of 1928, the Williams Fruit Corporation entered into written contracts with various grape growers to handle all their crops of grapes for said season. These contracts were all of the same general form and provided that the grower placed on consignment with the Williams Fruit Corporation his entire crop of grapes consisting of a stated acreage, more or less, grown at or near a specified place "$15.00 per ton guarantee". The fruit corporation in due course received the grape crops and marketed them to the best advantage, but failed to realize a net return sufficient to cover the specified guaranty. Thereupon, the growers relying upon the guaranty contained in their contracts, claimed to be creditors in an amount aggregating more than $5,000 and, in accordance with the provisions of the Produce Dealers Act of 1927, the director of agriculture of California in their behalf instituted an action against the fruit corporation and its surety on the bond which the corporation had given as required by the above-mentioned statute. The fruit corporation defaulted and the surety on the bond defended the action alone. Judgment was rendered against the defendants for the amount of the bond and the surety company appealed therefrom. Upon the appeal one of the contentions advanced by the appellant was that the transactions between the growers and the fruit corporation amounted to sales of the crops and that the growers by accepting the guarantees stated in the contracts had thereby extended credit to the produce dealer and that the bond did not purport to cover credit insurance and further that the contracts, because of the

guaranties contained in them, had become in effect purely private contracts between the growers and the produce dealer for breaches of which the surety was not liable. The Supreme Court, through Mr. Justice Preston, briefly disposed of this contention by holding that the guaranties contained in the contracts were merely inducements to the growers to enter into the contracts and did not alter the essential features of the contracts which were contracts of consignment and not of sale and were covered by the comprehensive provisions of the Produce Dealers Act defining a produce dealer.

From the above recital it is evident that the bond which formed the basis of the action was one which was given in conformity with the provisions of the Produce Dealers Act of 1927, and that the action was instituted in accordance with the provisions of said act. When the cause of action arose the Deciduous Fruit Dealers Act was not in existence. This latter statute was not mentioned in the opinion. The only statute which was involved in the case was the Produce Dealers Act and the single problem presented related exclusively to this statute and to its interpretation.

The Deciduous Fruit Dealers Act which it is charged appellants violated by engaging in the business of dealer in deciduous fruits without a license was enacted by the California legislature in 1929. It was approved on May 20, 1929, and by virtue of the legislative declaration of urgency therein contained, it became immediately effective. Section 17 of the act expressly provides that it "is not intended and shall not be construed to in any manner impair or repeal any part or provision of chapter 860 of the Laws of California, 1927, approved June 1, 1927, and commonly known as the 'produce dealers act' but the requirements for licensing and bonding of dealers in deciduous fruits, prescribed by this act, are in addition to all of the requirements and provisions of the said 'produce dealers act' with the exception . . . " The exception mentioned relates to the giving of the bond required by the later act and is not herein involved. We have then in the Deciduous Fruit Dealers Act, with whose provisions we are alone concerned, a clear-cut, unequivocal legislative declaration that the later act is not intended to repeal the earlier act, but that the requirements for the licensing and bonding of dealers in deciduous fruits prescribed in the later act are in addition to all of the

requirements and conditions contained in the earlier statute. Section 20 of the later act explains the reason which impelled the law-making body to impose additional restrictions upon dealers in deciduous fruits including grapes, and contains a mandate for its liberal construction. We perceive no difficulty in upholding the plain language of the later statute which provides that any person who acts as a dealer in deciduous fruits without a license shall be guilty of a criminal offense as a proper subject of legislative control. Nor can we accede to the suggestion that there is a conflict in the two statutes when we have in the later act the legislative intent so clearly expressed.

Furthermore, we think that careful analysis of the two statutes further demonstrates that by the Deciduous Fruit Dealers Act the legislature intended to require that individuals, who enter into contracts with the growers of deciduous fruits which contain provisions guaranteeing that such growers shall receive a specified minimum price therefor, must procure the license mentioned in the act and that the later statute places upon such dealers new and additional burdens not contemplated by or included in the provisions of the earlier statute. By section 3 of the Produce Dealers Act it is provided that the application for a license thereunder shall state (1) the class or classes of farm products which the applicant proposes to handle; (2) the full name of the applicant and if a firm, exchange, association or corporation, the full name of each member of the firm or the names of the officers of such exchange, association or corporation; (3) the applicant's principal business address in California and the name or names of the person or persons authorized to accept service of process and legal notices generally. It is further provided that the applicant shall satisfy the licensing official of the applicant's character, responsibility and good faith in seeking to conduct the business of produce dealer. The Deciduous Fruit Dealers Act requires that an application for a license to engage in the business of dealer in deciduous fruits shall contain the following information: (1) applicant's name and business address; (2) whether applicant is an individual, exchange, partnership, association, a group of persons or a corporation, and if a corporation, where organized and where its principal place of business is located; and if incorpo-

rated in any state or country other than California, the address of its California office, together with the name and address of a person in California upon whom service of legal process in California suits can be made; (3) how long applicant has been engaged in business as a dealer in California; (4) whether or not applicant has made settlement in full with the growers of deciduous fruit handled by said applicant in either one of the two immediately preceding calendar years and if such settlement has not been made, the name and address of each grower with whom settlement has not been made; (5) whether or not the applicant has controlled or conducted the operations of any company, partnership or corporation or other form of organization which has previously engaged in handling deciduous fruit, as a dealer, in a manner set forth in the act, and whether the applicant in such previous capacity, had made settlement with all growers in California; (6) the names and addresses of three persons, including at least one bank, all within the state of California, of whom inquiries concerning the applicant may be made; (7) a statement of the approximate number of tons of deciduous fruits that the applicant expects to deal with during the next twelve months, detailing the number of tons of each kind of deciduous fruit included in the total; (8) such additional and different information concerning applicant or his business as the licensing officer shall deem advisable to have to enable him to determine the applicant's qualification to engage in the business. It is evident that the information required to be furnished by the applicant for a deciduous fruit dealer's license is much more comprehensive and detailed than is required of the applicant for a produce dealer's license. The provision in the later act requiring the filing of a bond by the applicant for a deciduous fruit dealer's license is more comprehensive than the similar provision in the earlier act. The earlier statute specifically exempts from its operation all co-operative organizations. No such exemption is contained in the later statute. In other respects the Deciduous Fruit Dealers Act of 1929 is more comprehensive than the Produce Dealers Act of 1927. We entertain the opinion, therefore, that the legislature intended to require a new and additional license by the later act and that the possession of a produce dealer's license procured in accordance with the provisions of the

Produce Dealers Act is not sufficient to excuse the failure of a dealer in deciduous fruits to have obtained the special license required by the Deciduous Fruit Dealers Act.

██ With respect to the evidence which is contained in the record, it is to be observed that during the trial a number of written contracts between grape growers and Federal Farm Lands, Inc., were admitted. These contracts were of the same general form and in brief provided that the grower placed his entire crop of a specified kind of grapes grown on described property for the season 1932, in the hands of Federal Farm Lands, Inc., to pack and market for the grower's account, the fruit to be picked and delivered at grower's expense to the packing-house provided by Federal Farm Lands, Inc., at Blackstone and McKinley Avenues in Fresno, California, at such times and in such quantities as Federal Farm Lands, Inc., might direct, Federal Farm Lands, Inc., to receive for furnishing all materials and labor in packing and loading f. o. b. cars said crop of fruit, the general rates in force during the current season and to have a lien upon the fruit for all expenses incurred and for all moneys advanced by it for picking, packing or any reason whatsoever, and that any deficit that might occur would be payable upon demand of Federal Farm Lands, Inc. Following the signatures of the contracting parties each contract contained a provision to the following effect: "Guaranteed not less than $ . . . per ton and . . . % of returns over and above this amount after necessary deductions are made." The amount per ton which was guaranteed varied from $15 to $20 and the percentage of net returns in each contract is 25 per cent.

The evidence of the making of these contracts on the form authorized and provided by appellants containing minimum price guarantee provisions brought appellants squarely within the definition of dealer contained in the act and furnished ample justification for the jury's verdict that they were guilty of the offense charged in the first count of the information. Section 1 of the statute defines the terms "cash buyer", "consignment shipper", and "dealer". There is no pretense on the part of appellants that they were cash buyers. It is not therefore necessary to state the statutory definition of this phrase. It does, however, appear that appellants claim that the evidence

shows that they were consignment shippers. The statutory definition of this term may therefore properly be examined. Subdivision (d) of section 1 of the statute defines a consignment shipper to be "every person (1) who represents himself as a 'consignment shipper' and (2) who contracts with the grower of deciduous fruits for the marketing thereof for the sole account and risk of said grower and who pays to said grower the net proceeds derived from said sale, and (3) who does not, either in writing or verbally guarantee any price to said grower for his deciduous fruits, but a consignment shipper may, at his option, by a written contract with the grower recite that said shipper has an order for any deciduous fruits of the variety covered by the contract at a named price and that said shipper agrees to use said grower's fruit to fill such order". It appears, then, that one of the necessary elements of this definition is that the consignment shipper shall not, either in writing or verbally, guarantee any price to the grower. But, as hereinabove noted, the various contracts which were admitted in evidence to support the charge contained in the first count of the information all contained minimum price guarantees. It follows, therefore, that in making these contracts appellants were not consignment shippers as defined in the act. Subdivision (é) of section 1 defines a dealer to include every person other than a cash buyer or consignment shipper who attempts to make money on any deciduous fruit by dealing with the grower thereof. Since appellants were not cash buyers or consignment shippers as these terms are defined in the act and since the evidence further shows that they attempted to make money by dealing with the growers of grapes it follows that they were dealers within the statutory definition of this term. Section 2 of the act, which is entitled "Scope of Act", provides in part that the statute "shall have no application to any 'cash buyer' . . . nor to any 'consignment shipper' *except in so far as any consignment transaction involves a written or verbal price guarantee . . .* " (Italics ours.) This language further indicates the legislative intent as to the persons who are affected by the provisions of the act and makes it clear that the above-described contracts which purported to be consignment contracts with minimum price guarantees were precisely the character of contracts which the legis-

lature intended should be placed under the supervision of the director of agriculture and subjected to the regulations provided in the statute. We conclude, therefore, that appellants' second specification of evidentiary insufficiency is not well taken.

Complaint is made that the court erred in giving certain designated instructions and in refusing to give certain instructions which were offered and requested by appellants. With respect to the court's refusal to give the instructions offered by appellants it is to be observed that each of them related to the offense charged in the second count of the information. Since we have heretofore indicated our opinion that the conviction of appellants of the offense alleged to have been committed by them in the second count of the information is not supported by the evidence and that the portion of the judgment which refers to this offense must be reversed it is not necessary to give consideration to the proffered instructions.

Appellants complain of seven instructions which were given by the court and which relate to the offense charged in the first count of the information. One of these instructions is in the following language:

"You are instructed that the fact that the bond posted by Federal Farm Lands, Inc., with the State Department of Agriculture upon its application for a produce dealer's license may be held to apply to consignment contracts which involved a guarantee of a price, does not impair or involve the provisions of the dealers act, the '1929 act', and the fact that Federal Farm Lands, Inc., and its bondsmen may be held civilly liable under said bond does not affect the criminal provisions of the dealer's act, the '1929 act' under which these defendants are charged."

It is said that this instruction gives a graphic picture of the overlapping of the Produce Dealers Act of 1927 and the Deciduous Fruit Dealers Act of 1929, and illustrates the anomalous situation which is presented thereby in that consignment contracts covering farm products generally and containing minimum price guarantees are, under the construction placed on the Produce Dealers Act of 1927, by the decision in *Moulton* v. *Williams Fruit Corp., supra,* held to be legal while exactly similar contracts covering deciduous fruits are expressly proscribed by the Deciduous

Fruit Dealers Act of 1929, and the making of such contracts is denounced as a felony. This ingenuous statement is not strictly correct. The making of such contracts is declared to be a felony by a dealer in deciduous fruits who has not procured a license in conformity with the provisions of the Deciduous Fruit Dealers Act. If such a dealer procures a license required by the later act and delivers to the state director of agriculture the bond which the statute declares must be furnished he may freely enter into consignment contracts covering deciduous fruits and guarantee to the grower that he will receive a minimum price for the fruit. No particularly useful purpose would be subserved by indulging in a prolonged discussion of the reasons which animated the legislature to adopt the Deciduous Fruit Dealers Act. The very language of the statute shows that the law-making body was acutely sensible of the importance to the people of California of the deciduous fruit industry and proposed to protect this industry by placing under the supervision and regulation of the proper department of the state government such transactions with respect to deciduous fruit as do not amount to sales for cash or to simple consignment contracts containing no guarantees that the grower will receive at least a stated price for his fruit. It is neither strange nor unreasonable that the legislature should have taken such action. It is a perfectly natural incident in the development of enlightened public opinion with respect to an industry that is of paramount importance to the welfare of the people of the state. It has heretofore been mentioned that the Deciduous Fruit Dealers Act was not in existence when the cause of action in *Moulton* v. *Williams Fruit Corp.* arose. It is true that the statute had been adopted and written into the law of California when the opinion in the case was handed down. But the act of 1929 was not and could not be involved and a discussion of its provisions would have been neither proper nor desirable. We cannot, therefore, agree with appellants' criticism of the above-quoted instruction and in our opinion the giving of it was not error.

Two other instructions which relate directly to the two above-mentioned statutes are also attacked as improper. In one of them the court advised the jury as to the meaning of the term ''consignment shipper'' and in so

doing defined the phrase in the very language of the Deciduous Fruit Dealers Act. In our opinion it was entirely proper for the court so to do. ▮ The second instruction to which objection is made is in the following language: "Under the law a produce dealer's license is a license to conduct a consignment business and does not include the business of a deciduous fruit dealer." That portion of the instruction which is declared to be particularly objectionable is the language "and does not include the business of a deciduous fruit dealer". The language criticised is in exact conformity with the provisions of the Deciduous Fruit Dealers Act, for a violation of which appellants were being prosecuted, and in our opinion the court properly included it in the instruction.

▮ Criticism is expressed of another instruction wherein the jury was advised that if it should find that appellants were "dealers" as this term had been defined by the court and that they were acting as dealers without a license a verdict of guilty of the charge contained in the first count of the information should be returned. It is said that this instruction erroneously imposed upon the jury the burden of determining a purely legal question, viz., whether the appellants were dealers. However, it appears that the jury was fully and properly advised in another instruction what facts were required to be shown in order that it should appear that a person was a dealer under the language of the Deciduous Fruit Dealers Act. The instruction is not, therefore, vulnerable to the attack presented.

▮ Special complaint is voiced because the court gave three instructions which advised the jury that evidence had been offered of similar offenses to that alleged in the first count of the information and that before they could consider such evidence they should be convinced beyond a reasonable doubt that appellants had committed the act alleged in the first count, and further that when the very doing of the act charged is in issue one of the essential facts admissible is the person's plan or design to do the act.

We are in accord with appellants' criticism of these three instructions and agree that they should not have been given. As we have heretofore pointed out the first count of the information was so drawn that it did not allege the

commission of any specific act. It alleged that appellants had "engaged in the business of dealer in deciduous fruits". The language employed in the pleading did not, therefore, convey the idea that appellants had committed some specific, isolated act of dealing but that they had accomplished a number of transactions, all of which taken together showed that they had engaged in the business. It remains to be discovered whether it may fairly be declared that the jury was so misled by the instructions to the prejudice of appellants that a reversal is thereby required. It must, we think, be conceded that the instructions which conveyed to the jury the impression that the doing of some specific act had to be proved in order that the commission of the offense alleged in the first count of the information should be established were misleading. However, it is not so clear that appellants were thereby so prejudiced as to necessitate a reversal of the judgment. In our opinion, proof that appellants had made a number of contracts with growers was properly received for the purpose of establishing the commission of the offense charged. It is also clear, in our opinion, that proof that appellants had made any number of such contracts could do no more than establish the commission of the single offense alleged. But we do not understand that there was any denial by appellants that the various contracts made with grape growers were executed for Federal Farm Lands, Inc., by agents who were employed either by appellants directly or by their superintendent, J. W. Files, and that these contracts were in the very form which appellants had approved. Under these circumstances we think that it cannot be successfully maintained that appellants were prejudiced by the giving of the erroneous instructions. Under the allegations of the first count they could be and were convicted of the commission of a single offense and it can make no practical difference that the jury was advised that evidence of the commission of similar offenses was admitted for the purpose of showing intent. It is impossible for us to conclude, after an examination of the entire record, that any other result than that which was obtained would have occurred had the criticised instructions not been given. Since this is true, no miscarriage of justice resulted. (Sec. 4½, art. VI, Constitution of California.)　　　It is further to be

noted that it has not been made to appear that the erroneous instructions were not requested by appellants, which is sufficient of itself to obviate the necessity of considering appellants' claim that the giving of them constituted reversible error. (*People* v. *Cebulla,* 137 Cal. 314, 317 [70 Pac. 181]; *People* v. *Mesa,* 121 Cal. App. 345, 347 [8 Pac. (2d) 920].)

 Appellants object that the court admitted in evidence a copy of a certain contract between a grower, R. H. Rathgern, and Federal Farm Lands, Inc., executed for the corporation by an agent, B. E. Benson. It is urged that the instrument is a copy and not the original of the contract; that it does not bear the grower's signature; that it contains the notation "cash on del.", whereas the original contains no such provision. With respect to what is contained in the original contract the means of knowledge are not open to us since the record shows that it was in the possession of appellants, who chose not to offer it in evidence. It is evidently a copy, but it was the copy which was furnished to the grower by appellants' agent. It is true that it does not bear the grower's signature, but we discover no denial that the original was signed by the grower. We think under the circumstances presented by the record that no error was committed in its reception and we are likewise of the opinion that if it be assumed that its admission was improper, no prejudice thereby resulted to appellants which affects the verdict and judgment of conviction of the offense alleged in the first count of the information.

 It is finally objected that the statute of whose violation appellants were convicted is unconstitutional in several respects. It is said that it is unconstitutional in that it conflicts with section 15 of article I of the California Constitution, which prohibits imprisonment for debt. It is a sufficient answer to this contention to observe that the same point was raised in *People* v. *Perry,* 212 Cal. 186 [298 Pac. 19, 76 A. L. R. 1331], and was there decided adversely to appellants' contention. Furthermore, the claim of unconstitutionality in this regard relates only to the fact of nonpayment for fruit after demand, which bears upon the offense alleged in the second count of the information, and, inasmuch as we have heretofore indicated that the judg-

ment of conviction as to this offense should be reversed for insufficiency of the evidence, it is not necessary to give further consideration to the claim that the statute is unconstitutional for the reason stated.

The statute is also said to be unconstitutional because it establishes as conclusive an unreasonable presumption that the mailing of a demand is evidence that such demand was made. This claim also relates solely, so far as this case is concerned, to the offense charged in the second count of the information and need not be considered.

It is finally urged that the statute is unconstitutional because it imposes a direct burden upon and constitutes an unreasonable interference with interstate commerce in violation of article I, section 8, clause 3, of the Constitution of the United States. We understand that it is agreed that all of the grapes which formed the subject matter of the various contracts which were received in evidence during the trial of the action were shipped to points in the United States outside the state of California. This contention therefore merits consideration.

For the purposes of this decision, the problem which is presented is whether or not the statute which requires a dealer in deciduous fruits which form the subject of interstate commerce to procure a license and deposit a bond constitutes an unreasonable interference with such commerce in violation of the federal Constitution. This precise question was raised with reference to a similar provision contained in the Produce Dealers Act of 1927 in the case of *Moulton* v. *Williams Fruit Corp., supra,* and was decided adversely to appellants' contention in an opinion written by Justice Sturtevant of Division Two of the First Appellate District. A hearing was subsequently granted in the Supreme Court, and in the opinion written by Justice Preston (218 Cal. 106 [21 Pac. (2d) 936]) no mention is made of the point. The judgment of the superior court from which the appeal was taken was, however, affirmed by both the Supreme Court and by Division Two of the District Court of Appeal for the First District.

Appellants place much reliance upon a decision of this court in the case of *People* v. *Perry,* (Cal. App.) 291 Pac. 233. Unhappily for appellants, a hearing was subsequently granted in the Supreme Court and in the opinion written by Justice Richards a different conclusion was reached

from that which was reached in the Appellate Court (*People* v. *Perry*, 212 Cal. 186 [298 Pac. 19, 76 A. L. R. 1331]). In the later opinion it was found unnecessary to decide whether or not the statute was unconstitutional for the reason stated. It is our conclusion that the reasoning of the decision in *Moulton* v. *Williams Fruit Corp.*, (Cal. App.) 14 Pac. (2d) 88, is sound and that the Deciduous Fruit Dealers Act of 1929 does not conflict with the interstate commerce clause of the federal Constitution. As therein pointed out, the statute "does not contain a trace of an attempt to regulate commerce". It does express a clear intent on the part of the legislature to regulate dealers in deciduous fruits as defined in the act. The obvious purpose of the statute is to afford to the growers of deciduous fruits in California some measure of protection from the fraudulent practices of unscrupulous buyers which have for many years exercised a discouraging and detrimental influence upon one of the major industries of the state. To hold that an individual may with impunity violate the provisions of such a statute, merely because he ships into other states the fruits which he has procured in California from California growers, would be unreasonably to extend the scope of that provision of the federal Constitution which declares that Congress shall have power to regulate commerce among the several states of the Union. ▆ Statutes enacted by the law-making department of a state which are clearly confined to the legitimate exercise of the police power reserved to the sovereign states are not repugnant to the interstate commerce clause of the federal Constitution. (*Plumley* v. *Massachusetts*, 155 U. S. 461 [15 Sup. Ct. 154, 39 L. Ed. 223] ; *Missouri, Kansas & Texas Railway* v. *Haber*, 169 U. S. 613, 628 [18 Sup. Ct. 488, 42 L. Ed. 878] ; *Savage* v. *Jones*, 225 U. S. 501, 525 [32 Sup. Ct. 715, 56 L. Ed. 1182].) Counsel for appellants have not called to our attention any federal statute with which the Deciduous Fruit Dealers Act of 1929 conflicts, and the fact that the California statute may incidentally affect interstate commerce is not a sufficient reason for declaring it invalid.

For the reasons stated, it is therefore ordered that the portion of the judgment herein which decrees that appellants are guilty of the offense charged in the second count

of the information and adjudges that they be punished therefor by imprisonment in the state prison for an indeterminate period is reversed. In all other respects the judgment from which this appeal has been taken is affirmed.

Barnard, P. J., and Marks, J., concurred.

Petitions by appellants and respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, were denied by the Supreme Court on December 14, 1933.

Curtis, J., and Preston, J., dissented.