## GREAT ATLANTIC & PACIFIC TEA CO., Inc., v. DISTRICT OF COLUMBIA.

### No. 6734.

United States Court of Appeals for the District of Columbia.

Decided Feb. 1, 1937.

Abbot P. Mills, of Washington, D. C., and Caruthers Ewing, of New York City, for plaintiff in error.

Elwood H. Seal, Vernon E. West, and Chester H. Gray, all of Washington, D. C., for the District.

Before ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

ROBB, Associate Justice.

Writ of error to the Police Court of the District to review a judgment of conviction, on the verdict of a jury, under an information charging the defendant corporation (plaintiff in error) with selling two chickens represented to weigh 4 pounds and $6\frac{26}{33}$ ounces, the actual and true weight being less.

The information was brought under section 7 of the Act of March 3, 1921, 41 Stat. 1219 (section 7, Tit. 28, D.C.Code, 1929), which provides, in part, as follows: "No person shall sell * * * any commodity of any kind as a weight * * * greater than the actual or true weight * * * thereof."

The evidence so far as material is substantially as follows: Mrs. Exley, an employee of the Bureau of Weights and Measures of the District, testified that on July 27, 1935, she went to defendant's store at 3000 Connecticut avenue in the District. There were two or three clerks behind the meat counter and she asked one of them the price of frying chickens. Being advised that the price was 33 cents a pound, she told the clerk that she wanted a chicken that would weigh around three or four pounds, and was informed that no one chicken would weigh that much; whereupon she told the clerk that she would buy two. The clerk took two chickens out of the case and put them on the scale. She asked, "How much are they?" And he said, "They come to a dollar forty-six cents." She paid him that amount which he rang up on the cash register, and he put the chickens in a paper bag for her, and she left. She made a note on the bag of the address of the store, time of day, the price per pound of the chickens, and the total sum she paid therefor.

Mrs. Exley was accompanied to the store by Mr. Diller, chief inspector of the Bureau of Weights and Measures, who waited for her outside the store. After making the purchase she joined Mr. Diller and he "made the same notes in his book." They arrived at the Bureau twenty minutes later, and Mr. Diller weighed the chickens. They were found to weigh 3 pounds 4 ounces. Mrs. Exley had calculated that, with chickens selling at 33 cents per pound, for $1.46 she should have received 4 pounds $6\frac{26}{33}$ ounces; that on that basis the chickens purchased were 1 pound $2\frac{26}{33}$ ounces short. Witness testified that she would not be able to recognize the clerk who sold the chickens to her, and could not approximate his age, height, or whether he was fat or thin or an old or young man. Mr. Diller testified in corroboration of Mrs. Exley.

Mr. Bussey, manager of the meat department of defendant's store at 3000 Connecticut avenue on July 27, 1935, testifying for defendant, stated that on that date chickens were sold at two prices, one kind at 27 cents a pound and another at 33 cents a pound; that there were only three clerks (including witness, Dabbs, an extra, and May, a regular clerk) behind the meat counter on that day; that witness could not recall ever having seen Mrs. Exley; that he did not on July 27, 1935, "sell two chickens representing them to weigh 4 pounds, $6\frac{26}{33}$ ounces, which in fact weighed 3 pounds, 4 ounces." When a sale is made by weight and a price per pound, the price is computed mechanically on the scale; "is not figured with a pencil, but is figured right on the standard scales—computing scales—and very seldom we ever have to figure * * *." Witness accounts weekly to defendant's supervisor of the meat department for what comes into his (witness') department; that witness' cash is checked weekly by an inspector. An inventory of the meat department is taken every Saturday evening, and he must then account for the chickens which he had received that week; that he "would either have to have the chickens there or the cash representing the chickens"; that a special inventory just for chickens is not made, "but we inventory the department."

"Q. If you were short, you would have to pay for it? A. Not necessarily, no, sir.

"Q. Under what conditions would you not have to pay for it? A. Sometimes you can't figure exactly the amount.

"Q. Are you allowed any leeway in your figuring? A. I am supposed to make a certain profit."

504

The computation device is on the clerk's side of the scale, and is not visible to the customer. The price to be paid by the customer is mechanically registered, based on weight. Poundage is registered separately in the center of the scale, and the price of the article is mechanically computed by the scale and registered on the scale. The price of an article on the scale is obtained by looking at a column reflecting the price per pound of the article, and a red line shows "the amount it comes to." The scale shows the computation for selling an article at 33 cents a pound—the price of the chickens in the present case.

Mr. Dabbs, a witness for defendant, testified that he was employed as an extra and worked about two days each week during July and August, 1935; that on July 27th Mr. Bussey and Mr. May worked behind the meat counter with him at defendant's store here involved; that, after looking at Mrs. Exley, witness could not tell whether or not he had ever seen her before; that on Saturday, July 27th, he did not "sell to any person 3 pounds, 4 ounces, of chicken and charge for 4 pounds, 6²⁰⁄₃₃ ounces."

Mr. May, a clerk-butcher employed at defendant's store on July 27th, testified that he did not recall ever having seen Mrs. Exley except in court during the trial; that he had made no sale of "two chickens where there was a difference between the actual weight and the weight on which the price was computed of 1 pound 2 ounces."

■ In impaneling the jury it developed that four of the prospective jurors were employed by certain governmental agencies; one by the Federal Emergency Relief Administration, another by the Home Owners' Loan Corporation, a third by the Resettlement Administration, and the fourth by the Patent Office under the Department of Commerce. Defendant challenged these prospective jurors, individually and collectively, for cause on the ground of implied bias. There was no inquiry as to actual bias. The court overruled the challenge and defendant excepted, and this action of the court is assigned as error. It does not appear that the defendant exhausted its three peremptory challenges. When the jury was sworn the above four government employees remained as jurors.

Prior to 1935 "salaried officers of the United States" were exempted from jury service in the District by virtue of section 360, Tit. 18, D.C.Code 1929 (section 217, D.C.Code. 1924), but by the Act of August 22, 1935 (chapter 605, 49 Stat. 682), amending the above section of the Code, eligibility for jury service was extended to persons "employed in the service of the Government of the United States," with certain exceptions not here material. The challenged jurors in the present case were not within those exceptions. In United States v. Wood, 57 S.Ct. 177, 187, 81 L. Ed.——, decided by the Supreme Court of the United States on December 7, 1936, rehearing denied January 11, 1937, 57 S. Ct. 319, 81 L.Ed. ——, which involved the eligibility of government clerical employees to serve on criminal juries in the District, the constitutional validity of the Act of August 22, 1935, was sustained, and it was held "that the imputation of bias simply by virtue of governmental employment, without regard to any actual partiality growing out of the nature and circumstances of particular cases, rests on an assumption without any rational foundation." There is therefore no merit in this assignment.

■ In the next assignment of error it is contended that "when correctly analyzed and understood, there was no evidence justifying submission of the case to the jury." It is said that "the uncontradicted evidence showed that if there was a transaction such as detailed by Mrs. Exley, it was because of an error arising from reading a mechanical device which computed the price and not an error in weighing the chickens." It is conceded that "an error in stating the weight of a commodity and selling it at that weight would justify a conviction." Mrs. Exley testified that she was told the price per pound of the chickens. There is no dispute as to that. Neither is it disputed that she told the clerk that she wanted a chicken or chickens "that would weigh around three or four pounds." The clerk then put two chickens on the scale, and when Mrs. Exley asked, "How much are they?" he responded, "They come to $1.-46." In common parlance, there was an implied representation as to weight. Certainly the evidence warranted the jury in so finding.

■ Counsel for plaintiff in error requested and was refused an instruction that if the jury should find that a duly authorized agent of the plaintiff in error made a sale of chickens "and made no representation as to the weight of the chickens, but innocently and honestly computed the result of a correct weight at the pre-

vailing price, and innocently and honestly gave the customer an erroneous computation," their verdict must be "Not Guilty." In his charge to the jury, the court said: "If you have a reasonable doubt in your minds as to whether this lady did actually go in there and purchase this chicken, as to whether the price was quoted at 33 cents a pound, and as to whether the price charged was $1.46, it will be your duty to give the benefit of that reasonable doubt to the defendant, and acquit the defendant." The court further instructed the jury "that if it was a mistake made by the employee without any intent on his part to cheat and defraud the customer, the mistake is no defense." This is assigned as error.

The statute makes it an offense, regardless of intent, to sell "any commodity of any kind as a weight * * * greater than the actual or true weight." Undoubtedly it was the purpose of the statute to protect purchasers. To permit a defendant charged with a violation of the statute to avoid the consequences by contending that it was a mistake on his part, without intent to cheat and defraud the customer, would measurably defeat the purpose of the statute. Moreover, the evidence in the present case woud not justify such a contention. The court observed in City of New York v. Biffle (Sup.) 91 N.Y.S. 737, that a violation of the statute, "no matter for what reason," renders the violator liable to a penalty.

Judgment affirmed.

Affirmed.