**STATE OF OHIO, Plaintiff-Appellee v. WEISBERG, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19417.　Decided December 6, 1943.

474

Thos. A. Burke, Jr., law director, Cleveland, for plaintiff-appellee.

Boyd, Brooks & Wickham, Cleveland, for defendant-appellant.

**OPINION**

By SKEEL, J.

The defendant was found guilty by the verdict of a jury, in the Municipal Court of Cleveland, of a violation of §13106 GC.

The defendant was the manager of The American Meat Company's store located at 5901 Broadway in the City of Cleveland. Two inspectors of the City of Cleveland employed in the City Sealer's office, called at the store in question on Saturday morning, May 22, 1943. One of the inspectors went to the meat counter where beef and veal were displayed for sale. She first purchased a piece of beef for which she was charged 87c. She then asked the clerk the price of veal. She was told that the price was 28c per pound. She then pointed out one of the pieces of veal in the showcase, upon which was a tag indicating the price at 28c. When the clerk weighed this piece he was told it was more than she wanted and she pointed out another piece which she testified was in the same pile but which the clerk insists was some few inches removed from the place where the first piece had been in the showcase. When the clerk weighed this piece, the inspector was told it would cost 87c. The inspector said she would take it and so it was wrapped up and a price tag given with which to pay the cashier. The piece of veal actually weighed three pounds. The evidence as to the manner in which the sale was made is not in dispute. The inspector pointed out the piece of veal she wanted and after weighing it the clerk charged her 87c. No mention of the weight was made either by the clerk or by the inspector. After the sale the inspector identified herself and upon a re-weighing of the veal it was found to weigh three pounds but it was claimed there was a short weight given because three pounds at 28c per pound would come to 84c and not 87c, the price charged. The scales were tested and found to be correct.

The defendant, manager of the store, was not present when the sale was made and the clerk who made the sale was not a regular butcher. He was, in fact, employed as a sign painter and helped out behind the counter on Saturdays when the store was busy. The defendant, when his attention was called to the transaction and he examined the veal purchased by the inspector, declared that it was not "whole shoulder" for which the price on that day was 28c per pound, as was the first piece weighed, but was "round shoulder" a more expensive cut, for which the store was charging on that day 31c per pound, and therefore the inspector not only was not overcharged, but that she was in fact undercharged and received more meat by weight than she was entitled to.

There is no evidence in the record to dispute in the slightest that the meat purchased was a more expensive cut than was being sold for 28c per pound. The inspector did testify as indicated above that this piece was in the same pile with the first cut selected, upon which there was a 28c tag. This testimony is in sharp conflict with all the other evidence on this subject.

At the conclusion of the taking of testimony and during the prosecutor's opening argument to the jury he said:

"In these weight cases, if a person is going to overcharge, they overcharge them a little bit and **put it on each customer.**"

This sentence was uttered after a number of attempts on the part of the prosecutor to go outside of the record and explain why the amount of 1¾ ounces which was the amount of the claimed short weight which formed the basis of the state's case was so small. The bent of these statements, all far afield from the record, was that if a considerable overcharge for the weight given was made the customer would be far more likely to question it than where the overcharge or short weight was only an insignificant amount and implying that this defendant used this scheme in the general practice of short-weighing his customers. The court had sustained defendant's objections as to each of these attempts, whereupon the prosecutor came forth with the sentence above quoted and to which defendant entered his objection.

The defendant presents three claims of prejudicial error:

1. That the affidavit does not state a crime as against this defendant.

2. That there being no proof that defendant directed or knowingly permitted his employee to commit the act com-

plained of, he could not be found guilty because of the absence of criminal intent.

3. Misconduct of the prosecutor.

We will first give consideration to the claims of the defendant-appellant that the affidavit does not set forth sufficient facts to constitute a cause of action against the defendant and that intent or knowledge on the part of the defendant is a necessary element of the crime.

An examination of the affidavit will disclose that although the allegations are not in the words of the statute, yet all of the necessary elements of the crime, as defined by §13106 GC are fully and completely set forth.

The contention of defendant-appellant is that the words "directing and permitting" require the allegation of knowledge or notice on the part of an employer that his employee is in fact cheating a customer by means of short weights. We hold that this is not a true construction of the legislative intention as expressed by the language of this section.

If we were to consider the statute as if the arrest had been of the employee who made the sale and not of the employer, certainly the reading of the statute would not indicate that knowledge or intent on the part of the defendant that he was giving a short weight would be a necessary element of the crime. The reading of the statute as it would apply to a defendant under these circumstances would be as follows:

"Whoever, on buying or selling any property * * * makes or gives a false weight or measure * * * shall be fined * * *."

If knowledge on the part of the defendant is a necessary element of the crime as thus defined, it must become so by judicial construction. And were it not for the case law of Ohio, it might well be so construed because of the almost universale rule at common law that there cannot be a crime without a criminal intent and that where the statute is silent on the question the legislature must have intended to include knowledge and intent as an element of the crime defined.

It is, of course, within the power of the legislature to make an act criminal without regard for the element of knowledge or intent. There are many acts that are so destructive of the social order, or where the ability of the state to establish the element of criminal intent would be so extremely difficult if not impossible of proof, that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant.

In these cases it is the duty of the defendant to know what the facts are that are involved or result from his acts or conduct. Statutes punishing the sale of adulterated foods or prohibiting the sale of intoxicating liquor to minors are most frequently found in this class of cases. The use of false weights could well come within this field of the law. But, as indicated above, unless it is made clearly to appear that the legislature intended to omit the element of guilty knowledge or intent, it will generally be held to be a necessary part of the crime.

The rule is well stated in Clark & Marshall on Crimes, Third Edition, paragraph 39 at page 50:

"No principle of the common law is better settled or more generally applicable than the principle that an act is not a crime if the mind of the person doing the act is innocent."

And in interpreting a statute, when this question is presented, the rule generally to be applied and as recognized by the great weight of authority is well stated in 22 Corpus Juris Secundum, page 85, paragraph 30:

"The legislature may make an act criminal without regard to the intent or knowledge of the doer. Whether it has done so is to be determined from the language and purpose of the statute. Where the statute is silent, knowledge and criminal intent is generally essential if the crime involves moral turpitude but not if it is malum prohibitum."

The use of short weights and measures clearly involves moral turpitude. In fact the use of false weights and measures and the use of false tokens was an indictable offense at common law at a time when all other acts of obtaining property by false pretense were not punishable at all and resulted only in the right to a civil action.

In the case of Rex v Wheatly, decided in 1761, which involved the making of false representation as to the number of gallons of malt liquor involved in a sale, Lord Mansfield stated the law as it was then interpreted as follows:

"The offense that is indictable must be such a one as affects the public. As if a man uses false weights and measures and sells by them to all or to many of his customers, or uses them in the general course of his dealing; so if a man defrauds another under false tokens. For these are deceptions that

common care and prudence are not sufficient to guard against; so if there be a conspiracy to cheat; for ordinary care and caution is no guard against this."

"These cases are much more than mere injuries; they are public offenses. But here (referring to the case before the court) it is mere private impositions or deceptions * * *."

But, as above indicated, the case law of Ohio clearly holds that where an act is prohibited by statute, without including therein the element of knowledge or intent, the courts will not, by judicial construction, include such elements as a necessary part of the crime, even though it be such an act as is mala in se. **Zint v State, 3 App. Rep. 473. State v Kelly, 57 Oh St 166,** see page 178.

Concluding, therefore, that if the employee had been the defendant in this action, the element of intent or knowledge would not have been a necessary part of the state's case, do the provisions of the statute make it a necessary part part of the state's case to show knowledge or intent on the part of the manager or employer who has been charged with a violation of such statute because of the acts of one of his employees? The reading of the statute as it has application to the employer, is as follows:

"Whoever, in buying or selling any property or directing or permitting an employee so to do, makes or gives a false or short weight * * *."

The phrase "directing or permitting" has to do with and refers to the phrase "buying or selling," by an employee and does not refer to the subsequent phrase, "makes or gives a false or short weight, * * *."

The elements of the crime so applied to the employer who sells through a clerk or agent, insofar as the need for showing knowledge and intent are the same as where the one who actually makes the sale is the defendant.

We hold, therefore, that the affidavit was sufficient and stated a good cause of action against the defendant and that knowledge and intent is not a necessary element of the state's case. In this conclusion all of the members of this court concur.

Coming now to the error claimed because of the alleged misconduct of the prosecutor. The majority of this court find that the argument of the prosecutor constituted prejudicial error and deprived the defendant of a fair trial.

· As indicated in the statement of facts' above set forth the prosecutor told the jury why, in his opinion, storekeepers who give short weights do so in small amounts, in such a way as to imply that defendant indulged continuously in such practice. This was completely outside the record. The court sustained a number of objections to this line of argument and if the prosecutor when so warned by the court not to go outside of the record, had complied with the court's direction, the prejudice to defendant's case which resulted would not have occurred. Not only did the prosecutor fail to heed the court's rulings and admonitions but he went further afield and said:

"In these weight cases, if a person is going to overcharge, they overcharge them a little and put it on each customer."

There is not one syllable of testimony in the record that would justify such a statement as applied to defendant in the general conduct of his business and which was undoubtedly said for the purpose of producing a feeling in the minds of the jurors against defendant, beyond anything that could possibly result from the evidence. It would directly indicate that this defendant was in the practice of short weighing his customers. In doing this, a majority of this court hold that the rights of defendant to a fair and impartial trial were prejudiced.

For the above reasons the judgment is reversed and the cause remanded for further proceedings according to law. Exceptions.

MORGAN, P. J., concurs.
LIEGHLEY, J., dissents.