[Crim. No. 4748. In Bank. Dec. 24, 1946.]

In re CLAY MARLEY, on Habeas Corpus.

L. M. Cahill and Hiram T. Kellogg for Petitioner.

Ray L. Chesebro, City Attorney (Los Angeles), Donald M. Redwine, Assistant City Attorney, and John L. Bland, Deputy City Attorney, for Respondent.

SCHAUER, J.—Petitioner, the proprietor of a meat market, was convicted of a violation of section 12023 of the Business and Professions Code, and sentenced to ninety days in the county jail. The mentioned section provides as follows: ''Every person who by himself or his employee or agent, or as the employee or agent of another, sells any commodity, at, by, or according to gross weight or measure, or at, by, as, of, or according to any weight, measure or count which is greater than the true net weight, . . . is guilty of a misdemeanor.'' Petitioner seeks release through habeas corpus on the ground that the quoted statute is unconstitutional as it is sought to be applied to the facts here shown. With this position we are compelled to disagree.

The record discloses that on or about March 22, 1945, an employe of the Office of Price Administration, named Mrs. Punteney, accompanied openly by one other woman (named Mrs. Sampson) and surreptitiously by two men (one of them named Delaney), all of the same calling, appeared at the counter of petitioner's meat market in Los Angeles County and requested of petitioner's clerk and employe, one Dennis, that the latter sell her one veal steak and four or five lamb chops. Dennis weighed the selections, told Mrs. Punteney and Mrs. Sampson the respective prices, and wrapped the meat.

Mrs. Punteney then showed Dennis her "identification" and summoned Delaney "who was waiting outside the door," and together they checked the weight of the meat, which was found to be less than that which would correspond, according to Office of Price Administration price charts posted in the market, to the prices charged. About two weeks later Delaney signed the complaint upon which petitioner's conviction is based. Dennis was also named as a defendant, was convicted, and was penalized by a $100 fine. It is undisputed that petitioner did not participate personally in the transaction here involved, was absent from the premises at the time it occurred, and had at no time instructed Dennis to give short weight.

The general rule of law as repeatedly enunciated and emphasized by the courts of California and of other jurisdictions is that a master or principal before he can be held criminally responsible for the act of an employe or agent must be proved to have "knowingly and intentionally aided, advised, or encouraged the criminal act." (See *People* v. *Doble* (1928), 203 Cal. 510, 515 [265 P. 184]; *United States* v. *Food & Grocery Bureau of So. Cal.* (1942), 43 F.Supp. 966, 971.) Thus, in *People* v. *Green* (1913), 22 Cal.App. 45, 50 [133 P. 334], cited and followed in the Doble case, the court declared that "Before one can be convicted of a crime by reason of the acts of his agent a clear case must be shown. The civil doctrine that a principal is bound by the acts of his agent within the scope of the agent's authority has no application to criminal law. (1 McLain on Criminal Law, § 188.) While false pretenses may be made to an agent of the person defrauded, yet when made by an agent they must be directly authorized or consented to in order to hold the principal, for authority to do a criminal act will not be presumed. (1 McLain on Criminal Law, § 683.)" The same salutary principle was reiterated in *People* v. *Armentrout* (1931), 118 Cal.App.Supp. 761, 762 [1 P.2d 556], and in *People* v. *Jarvis* (1933), 135 Cal.App. 288, 294 [27 P.2d 77], and, possessing the attributes of natural justice, is firmly entrenched in our jurisprudence. Other statements of the rule appear at pages 559-561 of 4 California Jurisprudence 10 Year Supplement; and also at pages 149-150 of 22 Corpus Juris Secundum, wherein it is pointed out that "The civil doctrine that a principal is bound by the acts of his agent within the scope of the agent's authority . . . has no application to criminal law since in order to render a person

criminally liable it is essential that he have the requisite criminal intent at the time that the supposed criminal act was committed. In other words, specific intent cannot be imputed to a person through an agent, without the principal's direct participation in the criminal act. Similarly, it has been held that as regards criminal liability for participation in a crime the relation of master and servant is not recognized. Therefore, the mere relation of principal and agent or of master and servant does not render the principal or master criminally liable for the acts of his agent or servant, although done in the course of his employment; it must be shown that they were directed or authorized by him, and a master is not criminally liable for acts of his servant done without the knowledge or consent of the master and in a place not under his control.''

In limited qualification of the general rule, however, legislative bodies in California as well as in other jurisdictions have adopted various statutes positively forbidding certain acts and imposing criminal liability upon the master if the act is knowingly performed by his servant within the scope of the latter's authority. (See 43 L.R.A.N.S. 11-37.) Such statutes have dealt with the sale of intoxicating liquor (*People* v. *Pera* (1918), 36 Cal.App. 292, 304 [171 P. 1091]); of pure foods and drugs (*People* v. *Schwartz* (1937), 28 Cal.App.2d Supp. 775 [70 P.2d 1017]; *In re Casperson* (1945), 69 Cal.App.2d 441 [159 P.2d 88]); and with the operating of gaming establishments and of saloons, and have been upheld by the courts (see 43 L.R.A.N.S. 11-37; cf. 35 Am.Jur. 1042-1043, § 602; 115 A.L.R. 1226-1236; 28 A.L.R. 1382-1394). Other instances in which criminal responsibility has been imposed despite lack of specific knowledge, direction or encouragement by the employer of the criminal act on the part of the servant are listed in *Commonwealth* v. *Mixer* (1910), 207 Mass. 141, [93 N.E. 249, 20 Ann.Cas. 1152, 31 L.R.A.N.S. 467, 468]. Examples are the driving of an unregistered automobile (*Feeley* v. *Melrose* (1910), 205 Mass. 329, 334 [91 N.E. 306, 137 Am.St.Rep. 445, 27 L.R.A.N.S. 1156]); being present where gaming implements are found (*Commonwealth* v. *Smith* (1896), 166 Mass. 370 [44 N.E. 503]); obstructing a highway (*Commonwealth* v. *New York Central & Hudson River Railroad* (1909), 202 Mass. 394 [88 N.E. 764, 132 Am.St.Rep. 507, 16 Ann.Cas. 587, 23 L.R.A.N.S. 350]); being present where implements for smoking opium are found (*Commonwealth* v. *Kane* (1899), 173 Mass. 477 [53 N.E. 919]); and the killing for sale of an

animal under a designated age (*Commonwealth* v. *Raymond* (1867), 97 Mass. 567).

Such exceptions are also recognized in the statement of the prevailing principles in 22 Corpus Juris Secundum 150, *supra,* by the observation that "under statutes positively forbidding certain acts irrespective of the motive or intent of the actor, a principal or master may be criminally liable for his agent's or employee's act done within the scope of his employment. ⁸. . ."

And in the field of weights and measures, the rule is, as stated in 68 Corpus Juris 165-166, sections 24, 25, that where, as here, the statute provides that "whoever, himself or by a servant or agent, is guilty of giving false or insufficient weight or measure shall be punishable, evidence of giving short weight by defendant's servant in his absence warrants a conviction of defendant. . . . [W]here qualifying words such as knowingly, intentionally, or fraudulently are omitted from provisions creating the offense it is held that guilty knowledge and intent are not elements of the offense. . . . These statutes make the seller the guarantor of the weight and quantity of the commodity sold without regard to his intent or knowledge." Cases in which the stated rule has been applied are *People* v. *Beggs* (1945), 69 Cal.App.2d Supp. 819 [160 P.2d 600] ; *Commonwealth* v. *Sacks* (1913), 214 Mass. 72 [100 N.E. 1019, Ann.Cas. 1914B 1076, 43 L.R.A.N.S. 1] ; *Smith* v. *State* (1931), 223 Ala. 346 [136 So. 270] ; *State* v. *Weisberg* (1943), 74 Ohio App. 91 [55 N.E.2d 870, 872] ; *Great Atlantic & Pacific Tea Co.* v. *District of Columbia* (1937), 89 F.2d 502. The principle upon which such holdings are based is expressed as follows in *State* v. *Weisberg* (1943), *supra,* at page 872 of 55 N.E.2d : "There are many acts that are so destructive of the social order, or where the ability of the state to establish the element of criminal intent would be so extremely difficult if not impossible of proof, that in the interest of justice the legislature has provided that the doing of the act constitutes a crime, regardless of knowledge or criminal intent on the part of the defendant.

"In these cases it is the duty of the defendant to know what the facts are that are involved or result from his acts or conduct. Statutes punishing the sale of adulterated foods or prohibiting the sale of intoxicating liquor to minors are most frequently found in this class of cases. The use of false weights could well come within this field of the law."

In the Beggs case, *supra,* 69 Cal.App.2d Supp. 819, the defendants had, in violation of section 26510 of the Health and Safety Code, sold sacks of onions which they represented to be of the weight stated on the respective labels of such sacks which defendants themselves had purchased but which actually, without defendants' knowledge, weighed less. Judge Bishop, authoring the opinion for the Appellate Department of the Superior Court, applied and followed the stated exception to the general rule (requiring intent as a prerequisite to criminal liability) and in so doing observed (at page 822) that ''Neither knowledge nor an intent to defraud is made a condition of the statute, with the result that the act of selling misbranded goods constitutes the offense, though done, as it doubtless was in the case before us, both in happy ignorance of the fact that the legend on the sacks was incorrect and without any intention of defrauding anyone. This conclusion is supported by cases analogous to ours, decided in this state [citations].''

Petitioner complains that he was denied due process and the equal protection of the laws in that he was not permitted to prove that he came within the provisions of subdivisions 4 and 6 of section 26 of the Penal Code. Such provisions are, in material part, as follows: ''All persons are capable of committing crimes except those belonging to the following classes: . . . Four. Persons who committed the act . . . under an ignorance or mistake of fact, which disproves any criminal intent . . . Six. Persons who committed the act . . . through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.'' Without any implication as to the legal propriety of his claim, as such, it is to be noted that the petitioner was properly allowed to introduce evidence tending to show that the prohibited act (the short weight element of the sale) was committed *by the clerk* by accident or mistake of fact, but on this issue the finding was adverse to the two defendants. The facts that petitioner was not present when the short weight sales were made and that he had not instructed the clerk to sell short weight, do not bring petitioner within the code provisions above quoted. He shows no other evidence or offer of evidence to that end. Whether some hypothetical situation (such, for example, as a conspiracy by a clerk with others deliberately to injure an employer) not shown by the

record here, might properly be shown and be held to bring an employer within the purview of the code provisions, we do not, upon this application for habeas corpus, in the light of the record, have occasion to determine.

Inasmuch as the Legislature of this state has seen fit, in the exercise of its power, to impose upon petitioner criminal liability for the offense which was committed by his employe, we cannot, in the light of the authorities above cited, hold that the statute as written, or as applied here, invades a constitutional right of the petitioner. The seemingly (upon the record before us) disproportionate severity of the penalty assessed by the trial judge against this petitioner, as compared to that meted out against his codefendant, who was the primary actor, does not constitute a legal basis for intervention by habeas corpus. The writ of habeas corpus heretofore issued is discharged and petitioner is remanded to custody.

Gibson, C. J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Broadly speaking this case brings into sharp focus the clash between conflicting social philosophies which are reflected in the interpretation of constitutional and statutory provisions. That is, should the burden be placed upon an innocent and blameless employer, engaged in a business not in itself harmful to the public, of risking conviction of a crime and service of a jail sentence because of the mistake, intentional or not, of his employee? The majority opinion answers this question in the affirmative. With this conclusion I cannot agree. In my opinion there are no considerations of public policy or general welfare which warrant such a departure from the long established rule that criminal intent is a necessary element of a crime. Various situations can be imagined which render intolerable, and shocking to one's sense of justice, the construction placed by the majority opinion on the statute here involved. Similar statutes could be passed relating to the sale of railroad tickets or the cashing of checks which would make criminally liable the officers of a railway or banking corporation for an error made by an employee in overcharging a customer for a ticket or short changing a customer in the cashing of a check. Upon the occurrence of such an event in a remote section of the state where the railroad or bank was

operating, the president and other officers of the railroad or bank who might reside in a metropolitan area hundreds of miles from the place where the crime was committed could be arrested and sent to jail for an alleged violation committed by a ticket clerk or bank teller. Likewise a merchant, who had been inducted into military service and who left his business in charge of a manager, could be sent to jail for violation of such a statute committed during his absence in military service when he had no knowledge whatever of what was taking place in his place of business. In such a case there is nothing an employer can do to protect himself, as the act of the employee is one which depends entirely upon use of his own faculties and senses and it is impossible for the employer to determine with any degree of accuracy whether the faculties and senses of the employee are functioning properly and accurately during all his working hours. These considerations, in my opinion, outweigh any benefit or advantage which may be gained to the public by an interpretation of a statute which places upon an innocent and blameless employer criminal responsibility for an act of his employee. ⚞⚟⚞ ⚟

The specific issue here involved is the correct construction of section 12023 of the Business and Professions Code quoted in the majority opinion. Should it be construed to mean (1) that the master or principal (petitioner here) is criminally liable thereunder even though he is wholly innocent of fault or blame—did not authorize, assent to, direct or acquiesce in the act of his employee, or (2) that he shall not be denounced a criminal unless he authorized, assented to, directed or acquiesced in the unlawful act of his employee?

It is clear that the section is reasonably susceptible of the second construction; it certainly is at least equally amenable to either the first or the second interpretation. The statute condemns unlawful action of a principal by his agent. In other words, the unlawful action of the agent must be authorized specifically not generally under the broad authority to sell his principal's merchandise. It will be remembered that the statute condemns the unlawful act by oneself or by agent. "By oneself" means "alone" "unaided." (Webster's New Int. Dict., p. 367.) That expression followed by "or by an agent" must indicate that in the latter case the principal is acting not alone. He has procured and had the aid of his employee. They are acting together—in concert. He is still the one who must commit the unlawful act before he is guilty

but he has assistance, that is, he instructs his agents to physically commit the act denounced. But even if the scales hang equally the second construction is compelled by numerous factors.

In a comprehensive discussion of the law with respect to criminal liability without fault Professor Francies Bowes Sayre, in suggesting tests for the construction of statutes purporting to impose such liability, says: "How then can one determine practically which offenses do and which do not require mens rea, where the statute creating the offense is entirely silent as to requisite knowledge? Although no hard and fast lines can be drawn, two cardinal principles stand out upon which the determination must turn.

"The first relates to the character of the offense. All criminal enactments in a sense serve the double purpose of singling out wrongdoers for the purpose of punishment or correction and of regulating the social order. But often the importance of the one far outweighs the other. Crimes created primarily for the purpose of singling out individual wrongdoers for punishment or correction are the ones commonly requiring mens rea; police offenses of a merely regulatory nature are frequently enforceable irrespective of any guilty intent.

"The second criterion depends upon the possible penalty. If this be serious, particularly if the offense be punishable by imprisonment, the individual interest of the defendant weighs too heavily to allow conviction without proof of a guilty mind. To subject defendants entirely free from moral blameworthiness to the possibility of prison sentences is revolting to the community sense of justice; and no law which violates this fundamental instinct can long endure. Crimes punishable with prison sentences, therefore, ordinarily require proof of a guilty intent." (33 Col.L.Rev. 55, 72.) In the instant case a violation of the statute is a misdemeanor. (Bus. & Prof. Code, § 12023, *supra.*) And a misdemeanor is punishable by a fine not exceeding $500 or by imprisonment in the county jail not exceeding six months, or by both (Pen. Code, § 19).

This court has recently given consideration to a similar problem in the cases involving a statute declaring the forfeiture of a motor vehicle "used to transport any narcotics." (Health & Saf. Code, § 11610.) In *People* v. *One 1941 Ford 8 Stake Truck,* 26 Cal.2d 503 [159 P.2d 641], this court speaking of the use of the car to carry narcotics without the owner's

consent states (at p. 506): "It is true that the Health and Safety Code *does not expressly exempt from confiscation an automobile taken in the first instance without the owner's consent* and used to transport narcotics but *it has been construed as not authorizing forfeiture under such circumstances. The reasoning leading to this conclusion is that a contrary determination would amount to an unconstitutional deprivation of property without due process of law (People* v. *One 1937 Plymouth 6, supra* [37 Cal.App.2d 65 (98 P.2d 750)]), and where a statute is susceptible of two interpretations, one of which would satisfy constitutional guarantees, if possible the courts will uphold the legislation. (*Bodinson Mfg. Co.* v. *California Emp. Com.,* 17 Cal.2d 321, 326-327 [109 P.2d 935].)" [Emphasis added.] *People* v. *One 1941 Buick Sport Coupe,* 28 Cal.2d 692 [171 P.2d 719], concerned the possession, unknown to the car owner, of narcotics in the vehicle by a guest of the owner and operator of the car. The trial court's judgment of forfeiture was reversed. (See, also, *People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433].)

There are cases involving various statutes where the innocent employer is held criminally liable for the acts of his employee. (See 43 L.R.A.N.S. 11; 33 Col.L.Rev. 55, 84.) Where an employee sells liquor to a minor he is making the very decision that he has been employed to make, that is, deciding when he should sell and whether a particular customer is a minor. The employer in effect confers upon him the authority to violate or not violate the law in selling the liquor. But it is not to be supposed that the employer would authorize the employee to give short of the correct weight in the sale of merchandise. In the pure and adulterated food cases the employer has possession and control of the merchandise and is not asked to warrant at his peril the integrity of an employee.

Habeas corpus is the appropriate remedy in the instant case. In discussing the availability of habeas corpus to test the constitutionality of a statute this Court has said: " 'It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired . . . the rule is not so inflexible that it may not yield to exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.' . . . There are other situations in which

habeas corpus is used, not as a test of jurisdiction, but to review a question of law that cannot otherwise be raised or is so important as to render the ordinary procedure inadequate. Thus, it lies to test whether there is probable cause to justify the committing magistrate in holding petitioner for trial. . . . It also lies to test whether the complaint charges a public offense . . . even though this question falls within the jurisdiction of the trial court and may be raised on appeal." (*In re Bell*, 19 Cal.2d 488, 493 [122 P.2d 22].) Where a person is imprisoned by virtue of an erroneous construction of a criminal statute or for acts not constituting a crime, he should be released on habeas corpus. (See *In re Corryell*, 22 Cal. 178; *Ex parte Kearny*, 55 Cal. 212; 39 C.J.S., Habeas Corpus, § 17.) This does not mean that every error at law is a basis for the writ. However the correct interpretation of the criminal statutes is, like the issue of constitutionality, of great public importance in view of its widespread significance and its bearing upon not only the case under consideration but other cases.

In my opinion the petitioner should be discharged from custody.