Appellate Department, Superior Court, Los Angeles

[Crim. A. No. 4710.   Oct. 31, 1961.]

THE PEOPLE, Respondent, v. DORA M. BALMER et al.,
Appellants.

Stanley D. Clark for Appellants.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.

SWAIN, P. J.—The defendants were convicted of violating the following sections of the California Administrative Code: section 310, owning and operating a nursing home and convalescent home without keeping and maintaining it "in a clean and sanitary condition and in good repair at all times"; section 299, owning and operating such an institution "without keeping and maintaining all kitchens and kitchen areas clean and free of litter and rubbish and protected from rodents, roaches, flies and other insects, and all utensils, counters, shelves, tables, stoves, hoods and other equipment clean and in good repair"; section 302, owning and operating such an institution "without cleaning and disinfecting all multi-use utensils used for eating, drinking and in the preparation and serving of food and drink after each usage in the manner and form required by this section"; section 335, owning and operating such an institution "without sterilizing bedside equipment such as wash basins, mouth-wash cups and bedpans by the method of submersion in boiling water for a minimum of thirty (30) minutes or by autoclaving or by any other method,

or at all''; section 350-A, owning and operating such an institution ''without making provision for a clean and comfortable bed and mattress for each patient''; and section 319, owning and operating such an institution ''without keeping and maintaining in operating order at all times patient call systems whereby patients may signal nurses and attendants.'' The complaint also alleges that the defendants did ''wilfully and unlawfully'' violate each of the foregoing sections of the Administrative Code. The defendants appeal from the ''judgment'' and from the order denying a new trial. Sentence was not pronounced so there was no ''judgment,'' but probation was granted and we shall treat this as an appeal from that order as well as an appeal from the denial of a new trial.

The State Department of Public Health adopted the foregoing sections of the Administrative Code pursuant to the authority vested in it by section 1411 of the Health and Safety Code, which provides:

''The State department, after consultation with the advisory board and receipt of the recommendations of the advisory board in respect thereto, shall make and promulgate, and may thereafter modify, amend, or rescind, reasonable rules and regulations to carry out the purposes of this chapter, classifying hospitals and prescribing minimum standards of safety and sanitation in the physical plant, of diagnostic, therapeutic and laboratory facilities and equipment for each class of hospitals.'' Section 1417 of the Health and Safety Code provides:

''Any person who violates any of the provisions of this chapter or of the rules and regulations promulgated under this chapter is guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed five hundred dollars ($500) or by imprisonment in the county jail for a period not to exceed 180 days or by both such fine and imprisonment.''

The appellants claim that the ''judgment'' should be reversed on four grounds.

■ Appellants' Point (1). ''Defendants' were unconstitutionally denied due process of law and equal protection of the law by failure of the city health inspectors to give notice to defendants of alleged improper conditions and an opportunity to defendants to rectify such conditions.'' Neither the Health and Safety Code nor the Administrative Code requires any such notice to be given, nor does ''due process''

require a warning that one must comply with the law. There is no merit to this point.

Appellants' Point (2). "The jury was not instructed correctly as to the law." The trial judge instructed the jury: "These alleged violations fall within that category of crimes wherein neither guilty knowledge nor intent of the defendants need be shown. The mere omission to fulfill the required standard, if such be the case, constitutes the crime charged in each count." This point deserves a fuller discussion than point (1). We must decide whether the doctrine of *mens rea* applies to such a case as this or whether the doctrine that criminal statutes for the protection of public health impose sanctions even though the prohibited acts are committed without criminal intent or criminal negligence. The doctrine of *mens rea* is stated in Penal Code, section 20: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." The modern doctrine of criminal liability without fault is well stated in *People* v. *Stuart* (1956), 47 Cal.2d 167 [302 P.2d 5, 55 A.L.R.2d 705], a manslaughter case involving a violation of Health and Safety Code section 26280 which makes it a misdemeanor to prepare, compound, sell and offer for sale an adulterated or misbranded drug. At page 172 the court said: "Because of the great danger to the public health and safety that the preparation, compounding or sale of adulterated or misbranded drugs entails, the public interest in demanding that those who prepare, compound, or sell drugs make certain that they are not adulterated or misbranded, and the belief that although an occasional nonculpable offender may be punished, it is necessary to incur that risk by imposing strict liability to prevent the escape of great numbers of culpable offenders, public welfare statutes like section 26280 are not ordinarily governed by section 20 of the Penal Code and therefore call for the sanctions imposed even though the prohibited acts are committed without criminal intent or criminal negligence. (See *People* v. *Vogel, supra,* 46 Cal.2d 798, 801, note 2 [299 P.2d 850]; Sayre, *Public Welfare Offenses,* 33 Colum. L.Rev. 55, 72-75; Hall, *Prolegomena to a Science of Criminal Law,* 89 U. of Pa.L.Rev., 549, 563-569.)"

In *People* v. *Beggs* (1945), 69 Cal.App.2d Supp. 819 [160 P.2d 600], at page 822, this court said, *re* Health and Safety Code section 26510 which deals with selling food (onions) misbranded as to weight: "Neither knowledge nor an intent to defraud is made a condition of the statute, with the result

that the act of selling misbranded goods constitutes the offense, though done, as it doubtless was in the case before us, both in happy ignorance of the fact that the legend on the sacks was incorrect and without any intention of defrauding anyone. This conclusion is supported by cases analogous to ours, decided in this state (*People* v. *Hartman* (1900), 130 Cal. 487, 490 [62 P. 823]; *People* v. *Pera* (1918), 36 Cal. App. 292, 304 [171 P. 1091]; *People* v. *Bickerstaff* (1920), 46 Cal.App. 764, 770 [190 P. 656]; *People* v. *Sweeney* (1944), 66 Cal.App.2d 855, 859 [153 P.2d 371]), and by cases on all fours, decided elsewhere (*Commonwealth* v. *Sacks* (1913), 214 Mass. 72 [100 N.E. 1019, Ann.Cas. 1914B 1076, 43 L.R.A. N.S. 1]; *Smith* v. *State* (1931), 223 Ala. 346 [136 So. 270, 271]; *Woodard* v. *State* (1941), 30 Ala.App. 144 [2 So.2d 330, 332]; *State* v. *Weisberg* (1943), 74 Ohio App. 91 [55 N.E.2d 870, 872]; *Great Atlantic & Pacific Tea Co.* v. *District of Columbia* (1937), 89 F.2d 502 [67 App.D.C. 30], 505; but see *City of Newark* v. *East Side Coal Co.* (1909), 77 N.J.L. 732 [73 A. 484])."

Inasmuch as the complaint in the case at bar alleged that the defendants did the acts "wilfully and unlawfully," the following on page 822 of the above opinion, is significant: "The employment of the words 'wilfully and unlawfully' in the complaints did not require proof of knowledge or intent not required by the statute. (*People* v. *Settles* (1938), 29 Cal.App.2d Supp. 781, 784 [78 P.2d 274].)" ▮ In view of the foregoing, we hold that the Administrative Code sections in question which deal with the health and sanitation in a public hospital are as exempt from Penal Code section 20 as statutes against misbranding onions and selling adulterated drugs. (See also *People* v. *Vogel* (1956), 46 Cal.2d 798 [299 P.2d 850], p. 801 second paragraph of note 2, and 22 C.J.S. 100.) ▮ The court correctly instructed the jury on that point.

▮ Appellants' Point (3). The sections of the Administrative Code of which the appellants were convicted "are unconstitutional as interpreted by the trial judge." The burden of appellants' attack on those sections is that they are unreasonable, arbitrary and discriminatory and are beyond the powers conferred by the Legislature upon the State Department of Public Health. As examples of provisions in the sections of the Administrative Code which appellants claim are uncertain, they ask: What is meant by "clean" and "in good repair" as used in sections 310, 299 and 350-A? The

evidence shows that some sheets on patients' beds were soiled with dry fecal matter, that there were roach droppings on the kitchen shelves where pots and pans were stored, that there was a heavy odor of urine in room 10, that there was fly infestation (10 to 15 flies hovering about in the toilet room adjoining room 9), that there were three broken windows in rooms 2, 25 and 17, that there were rusted and damaged window screens in four rooms and loose fitting window screens in the kitchen.

The words clean, sanitary and good repair are not so vague and indefinite as to make Administrative Code sections unconstitutional. In *Gaylord* v. *City of Pasadena* (1917), 175 Cal. 433 [166 P. 348] the trial court found the ordinance unconstitutional which conferred upon the city electrician authority to determine whether any electric wiring, connections, fixtures etc. are dangerous to life and property. The Supreme Court, reversing the trial court, said at page 439: "It does not define what conditions the city electrician must find to exist before he determines that the electrical apparatus is unsafe or dangerous. From the very nature and character of such apparatus it would be impossible for any ordinance so to do without working in many instances the very oppression which its language, necessarily general, is designed to prevent." In *Roth* v. *United States* (1957), 354 U.S. 476, 491 [77 S.Ct. 1304, 1 L.Ed.2d 1498] at page 1510 (L.Ed.) the court said, "This Court however, has consistently held that lack of precision is not itself offensive to the requirements of due process. . . . 'The Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. . . .' *United States* v. *Petrillo,* 332 U.S. 1, 7, 8 [67 S.Ct. 1538, 91 L.Ed. 1877, 1883]." The words under attack in the *Roth* case were "obscene" and "indecent." See also *Yanke* v. *State Dept. of Public Health* (1958), 162 Cal.App.2d 600, 605 [328 P.2d 556]. In *Missouri, K. & T. Ry. Co.* v. *State* (1906), 97 S.W. 720, the Court of Civil Appeals of Texas said at page 722: "The terms, 'clean,' 'suitable,' and 'sanitary' are frequently used in ordinances and laws defining certain nuisances. They are usually held to be terms of such certain meaning and so generally understood that they can be safely submitted to a jury on an issue of fact." *People* v. *Sarnoff* (1942), 302 Mich. 266 [4 N.W.2d 544, 140 A.L.R. 1206], construed a provision of a Detroit Building Code requiring a dwelling and

every part thereof to be kept in good repair by the owner. At page 545 of the N.W.2d citation, *supra,* the court stated: ''The words 'good repair' have a well known and definite meaning. . . . They sufficiently inform the ordinary owner that his property must be fit for the habitation of those who would ordinarily use his dwelling. It would be difficult, if not impossible, to lay down a rule of conduct in more exact terms which would at the same time cover the varying conditions presented in each individual case.'' From the foregoing, we do not need to discuss examples of what appellants claim make uncertain and indefinite other sections of the Administrative Code in question. We hold that they are constitutional and that there was no lack of due process.

Appellants' Point (4). ''There is not sufficient evidence to support a conviction'' of violating Administrative Code sections 310, 299, 302, 335 and 350-A. We have considered the entire record and find no merit in this claim; the evidence is abundant. We have discussed some of the evidence above. Nothing would be gained by a further detailed discussion of evidence.

The order granting probation and the order denying a new trial are affirmed.

Smith, J., and Bishop, J., concurred.